# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## POSTAL TELEGRAPH CABLE CO. V. UMSTADTER.

### March 16, 1905.

Absent, .Cardwell, J.

1. TELEGRAPH COMPANIES—*Interstate Messages—Constitutional Law.*— The provision of· section 1291 of the Code, imposing a penalty on telegraph companies for failure to transmit a message faithfully and impartially is not a violation of the commerce clause of the Constitution of the United States. While a telegraph line is an instrument of commerce, and telegraph companies are subject to the regulating power of Congress in respect to foreign and interstate business, and the authority of a State does not extend to *delivery* of messages *in other States*, a State may, in the exercise of its police power, in the absence of legislation by Congress, impose a penalty for a failure to transmit a message which is addressed to one in another State.

2. APPEAL & ERROR—*Constitutional Law—Jurisdiction of Court of Appeals.*—As jurisdiction in this case depends solely on the constitutional question involved, and that is decided adversely to the plaintiff in error, under express constitutional mandate this court decides no other question involved.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in an action of *Debt*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Cabell & Sebrell,* for the plaintiff in error.

*A. B. Seldner,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The defendant in error, J. M. Umstadter, recovered a judgment in the Court of Law and Chancery of the city of Norfolk against the plaintiff in error, Postal Telegraph-Cable Company, for $100, the penalty imposed by section 1291 of the Code of 1887 for failure to transmit a message. To that judgment this writ of error was awarded.

The facts of the case, briefly stated, are that the defendant in error, at Norfolk, Virginia, delivered to a messenger boy of the telegraph company, upon one of its blank forms containing the usual conditions, a message to be transmitted from that city to a person in the State of New York, paying the proper charges thereon, which was never transmitted.

The first error assigned is that the judgment is erroneous because the statute which imposed the penalty, so far as it applies to interstate messages, is in violation of Art. 1, sec. 8, of the Constitution of the United States, which authorizes Congress "to regulate commerce with foreign nations and among the several States, and with the Indian tribes."

It is settled law that a telegraph line is an instrument of commerce, and that telegraph companies are subject to the regulating power of Congress in respect to their foreign and interstate business. *Pensacola Tel. Co.* v. *Western Union Tel. Co.,* 96 U. S. 1, 24 L. Ed. 708; *Western Union Tel. Co.* v. *Texas,* 105 U. S. 460, 26 L. Ed. 1067; *Postal Tel., &c. Co.* v. *City of Richmond,* 99 Va. 102, 37 S. E. 789.

It is also settled that whatever authority a State may possess over the transmission and delivery of messages by telegraph

companies, it does not extend to the *delivery* of messages *in other States.* *Western Union Tel. Co.* v. *Pendleton*, 122 U. S. 347, 30 L. Ed. 1187, 7 Sup. Ct. 1126.

But in the case of *Western Union Tel. Co.* v. *James*, 162 U. S. 650, 40 L. Ed. 1105, 16 Sup. Ct. 934, it was held that a statute of the State of Georgia imposing a penalty upon a telegraph company for failure to deliver impartially, in good faith and with due diligence, a message sent from another State to a person in Georgia, was a valid exercise of the police power of the State, and not in violation of the commerce clause of the Federal Constitution. In discussing the question, whether or not the statute involved in that case was valid, Mr. Justice Peckam, who delivered the opinion of the court, said, among other things, that "in one sense it (the statute) affects the transmission of interstate messages, because such transmission is not completed until the message is delivered to the person to whom it is addressed, or reasonable diligence employed to deliver it. But the statute can be fully carried out and obeyed without, in any manner, affecting the conduct of the company with regard to the performance of its duties in other States. It would not unfavorably affect or embarrass it in the course of its employment, and hence until Congress speaks upon the subject, it would seem that such a statute must be valid. It is the duty of a telegraph company, which receives a message for transmission directed to an individual at one of its stations, to deliver that message to the person to whom it is addressed with reasonable diligence and in good faith. That is a part of its contract, implied by taking the message and receiving payment therefor.

"The statute in question is of a nature that is in aid of the performance of a duty of the company that would exist in the absence of any such statute, and it is in no wise obstructive of its duty as a telegraph company. It imposes a penalty for the

purpose of enforcing a general duty of the company. The
direction that the delivery of the message shall be made with
impartiality and in good faith, and with due diligence, is not
an addition to the duty which it would owe in the absence of
such statute. Can it be said that the imposition of a penalty
for the violation of a duty which the company owed by the gen-
eral law of the land is a regulation of, or an obstruction to, in-
terstate commerce, within the meaning of that clause of the
Federal Constitution under discussion? We think not. No
tax is laid upon any interstate message, nor is there any regu-
lation of a nature calculated to at all embarrass, obstruct, or
impede the company in the full and fair performance of its
duty as an interstate sender of messages. We see no reason to
fear any weakening of the protection of the constitutional pro-
vision as to commerce among the several States by holding that
in regard to such a message as the one in question, although it
comes from a place without the State, it is yet under the juris-
diction of the State where it is to be delivered (after its arrival
therein at the place of delivery), at least so far as the legislation
of the State tends to enforce the performance of the duty owed
by the company under the general law. So long as Congress
is silent upon the subject, we think it is within the power of
the State government to enact legislation of the nature of the
Georgia statute. It is not a case where the silence of Congress
is equivalent to an express enactment. . . . In the case
at bar there is no tax laid upon the messages, and no obstruction
is placed in the way of the company in regard to the perform-
ance of any duty owed by it in connection with them. Instead
of obstructing, this statute aids, commerce. The subject of the
act is not national in its character, nor is uniformity at all
requisite. Conduct which might incur the penalty of $100 in
one State, might violate no statute in another, and in still a
third might subject the carrier to a penalty of but $50, and

yet there would exist no reason for uniformity of rule govern-
ing the subject, and the carrier would really suffer nothing from
its absence.

"Nor is the statute open to the same objections that were
regarded as fatal in *Western Union Tel. Co.* v. *Pendleton*, 122
U. S. 347, 30 L. Ed. 1187, 7 Sup. Ct. 1126, 1 Inters. Com.
Rep. 306. No attempt is here made to enforce the provisions of
the State statute beyond the limits of the State, and no other
State could, by legislative enactment, affect in any degree the
duty of the company in relation to the delivery of messages
within the limits of the State of Georgia. No confusion, there-
fore, could be expected in carrying out within the limits of that
State the provisions of the statute. It is true it provides for a
penalty for a violation of its terms, and permits a recovery of
the amount irrespective of the question whether any actual
damages have been sustained by the individual who brings the
suit; but that is only a matter in aid of the performance of the
general duty owed by the company. It is not a regulation of
commerce, but a provision which only incidentally affects it."

We have quoted thus fully from the opinion of the court in
that case, because it is the latest expression of opinion of that
court as to the extent of the police power of the States in
reference to interstate messages, and by the principles there
enumerated we are to be governed in the decision of the ques-
tion now under consideration. In that case the default of the
telegraph company occurred wholly in the State of Georgia.
In this case the whole default took place in this State. In the
one case, it was a failure to deliver in a reasonable time after
the message had reached the station to which it was destined;
in the other, it was a failure to transmit at all from the point
of origin. It may be that that portion of the statute under
consideration, in so far as it provides that messages shall, with
certain exceptions, be transmitted in the order of delivery, is

an attempt to regulate commerce, and to that extent may be invalid; but this is not a proceeding for a failure to transmit the message in the order of its delivery to the telegraph company, for which a penalty is also provided, but it is for a total failure to transmit, and is covered by that provision of the statute which imposes a fine for every failure to transmit faithfully and impartially. The provision of the statute under which the penalty was imposed in this case was, therefore, for the purpose of enforcing the general duty of the telegraph company, which it owed to all persons in this State. "The direction," said the Supreme Court, in *Western Union Tel. Co.* v. *James, supra,* "that the delivery of the message shall be made with impartiality and in good faith, and with due diligence, is not an addition to the duty which it owed in the absence of such a statute." Neither is the direction of our statute, that a message shall be transmitted faithfully and impartially, an addition to the duty which the telegraph company owed in the absence of such provision; for it is as much the general duty of a telegraph company faithfully and impartially to transmit a message as it is to deliver it after it has reached its destination, and a provision which imposes a penalty for a violation of the general duty to transmit is no more a regulation of interstate commerce, it seems to us, than a statute which imposes a penalty for a failure to deliver. The provision in question in the Virginia statute can, as was said of the provision in the Georgia statute, "be fully carried out and obeyed without in any manner affecting the conduct of the company with regard to the performance of its duties in other States. It would not unfavorably affect or embarrass it in the course of its employment, and hence until Congress speaks upon the subject, it would seem that such a statute must be valid."

The provision of the Virginia statute involved in this case seems to us to be within the reasoning and the spirit of the

decision in the *James case*, and is no more a regulation of or obstruction to interstate commerce than was the provision of the Georgia statute which was upheld in that case. While the requirement that telegraph companies shall transmit messages faithfully and impartially, under a penalty, may incidentally affect, it is an aid to commerce, and stimulates such companies to discharge the duty which the general law has imposed upon them.

"It cannot be doubted," says Judge Cooley in his work on Constitutional Limitations (6th Ed.), p. 715, and his statement is quoted with approval by the Supreme Court of the United States in *Lake Shore, &c. R. R. Co.* v. *Ohio, &c.*, 173 U. S. 285, 297, 43 L. Ed. 702, 19 Sup. Ct. 465, 470, "that there is ample power in the legislative department of the State to adopt all necessary legislation for the purpose of enforcing the obligations of railway companies, as carriers of persons and goods, to accommodate the public impartially, and to make any reasonable provision for carrying with safety and expedition."

The same power must exist as to telegraph companies, for they exercise a public employment and are bound to serve all customers alike without discrimination. *Primrose* v. *W. U. Tel. Co.*, 154 U. S., p. 14, 38 L. Ed. 883, 14 Sup. Ct. 1098.

We are of opinion, therefore, that the provision of sec. 1291 of the Code, imposing a penalty upon a telegraph company for failing to transmit a message faithfully and impartially, is not in violation of the commerce clause of the Federal Constitution.

By section 88 of the Constitution of this State, which prescribes the jurisdiction of this court, it is provided that "in no case where the jurisdiction of the court depends solely upon the fact that the constitutionality of a law is involved, shall the court decide the case upon its merits, unless the contention of the appellant upon the constitutional question be sustained."

As our jurisdiction in this case depends solely upon the con-

Opinion.

stitutional question involved, and we have decided that question against the contention of the plaintiff in error, we have no jurisdiction to pass upon the merits of the case, and do not wish to be understood, in anything that has been said in this opinion, as intimating any opinion on any other question raised or argued in the case.

The judgment of the Court of Law and Chancery must be affirmed.

*Affirmed.*